BRUNOT, Justice
 

 (dissents).
 

 This a petitory action. The plaintiff is an agency of the state. It was created a body politic by Act No. 18 of 1894. The plaintiff is suing for the recognition of its title to and possession of 3 fractional sections of land in Township 20 S., R. 26 E., in Plaquemines parish, within the limits of the Buras levee district, more particularly described in paragraph IV of the plaintiff’s petition.
 

 The defendants are Ernest Cockrell, Mt. Forest Fur Farms of America, Inc., Moran Corporation of the South, Gulf Refining Company of Louisiana, Shell Petroleum Corporation, and Humble Oil & Refining Company. They allege that the lands sued for were acquired by their author in title, J. Homer Jordan, from the plaintiff, and they acquired by mesne conveyance from their said author in title.
 

 On the application of the plaintiff certain oils were sequestered, a temporary restraining order was issued, and, in due course,
 
 *723
 
 the plaintiff was granted a preliminary injunction. Four calls in warranty, two pleas of estoppel, and three exceptions were filed by the respective defendants, but, from our view of the case, these pleadings need not be considered.
 

 The defendants also allege that the plaintiff’s petition does not sufficiently describe the land sued for, and therefore it is not susceptible of identification and location on the ground.
 

 The case went to trial on these issues, and judgment was rendered in favor of the plaintiff and against the defendants, recognizing the plaintiff’s title to the land, sending it into possession thereof, maintaining the writ of sequestration, perpetuating the preliminary injunction, dismissing the calls in warranty, and taxing the defendants with all costs of the suit. All of the defendants appealed, suspensively and devolutively, from the judgment.
 

 The issues presented appear simple, but the record before us is exceptionally voluminous, and its thorough consideration required time and patience. It discloses that on July 14, 1914, the Buras levee board acquired from the state the following fractional parts of Sections 11, 12, and 13 of Township 20 S., R. 26 E., in Plaquemines parish, viz.: 44 acres of the N. W. quarter; 102 acres of the S. E. quarter and 53 acres of the S. W. quarter of Section 11; 12 acres of the S. W. quarter of Section 12; 93 acres of the N. E. quarter, 160 acres of the S. E. quarter and 160 acres of the S. W. quarter of Section 13. Under the provisions of sections 4 and 5 of Act No. 215 of 1908 and section 11 of Act No. 18 of 1894 as amended by Act No. 205 of 1910, the plaintiff sold said lands, together with other lands, and J. Homer Jordan, trustee, became the adjudicatee thereof. All of the defendants trace their titles to J. Homer Jordan, trustee.
 

 Many years after the sale and adjudication to J. Homer Jordan, trustee, the state conveyed to the Buras levee board the lands involved in this suit, viz.: 427 acres in Section 11; 632 acres in Section 12; 77 acres in Section 13, in Township 20 S., R. 26 E., in Plaquemines parish. There is nothing in the record to indicate that the plaintiff has parted with its title to said lands, but the defendants contend that it was the intention of the plaintiff levee board to sell, and of J. Homer Jordan, trustee, to buy, all land in Sections 11, 12, and 13 of Tp. 20 S., R. 26 E., in Plaquemines parish, and that they are entitled to have the error corrected to conform to the mutual intent of the parties, if their title does not include the acreage sued for.
 

 We have searched the record in vain for a substantial foundation for this contention. In reply to the defense that plaintiff’s description of the property sued for is not sufficient to admit of proof, the plaintiff invokes the rule that a defendant in the possession of. property beyond the boundaries called for by his title, as are the defendants in this case, and showing no title except that derived from the plaintiff, is a trespasser, and as against mere trespassers the plaintiff need show only an apparent title. In Albritton v. Shaw, 148 La. 427, 87 So. 32, 34, the court said:
 

 “Mere trespasser, of possessor who has no other evidence of title than his occupancy of
 
 *725
 
 the land, is without authority to question the validity of a patent * * * in due form and signed by the proper officers.”
 

 A sale of public lands made by a public officer, in pursuance of special laws governing their alienation, is a sale hy measure. State v. Buck, 46 La. Ann. 672, 15 So. 531.
 

 The record we are considering teems with documentary evidence and expert testimony. From the great mass we have found, and will state in what we believe to be their proper sequence, the following facts:
 

 Beginning with the meridian line in central Louisiana, the original United States surveys were made in the southeastern land district of Louisiana west of the Mississippi river down the right descending bank of the Mississippi river until they reached the confluence of Bayou Lafourche and the river. At this point there is a division. One set of surveyors continued the surveys down the Mississippi river. Another set went down Bayou Lafourche to the Gulf of Mexico. Thence the latter set continued eastward along the Gulf Coast
 

 This set of surveys proceeded eastward along the Gulf Coast until in 1837 G. F. Connelly, United States deputy surveyor, surveyed and platted Township 21 South, Range 26 East. Due to an error made in this set of surveys as it came down Bayou Lafourche, which error was repeated in all surveys in this set after it was made, the northern boundary line of Township 21 South, Range 26 East, was placed in Connelly’s survey thereof approximately 3 miles north of the place where it should have been placed.
 

 This error is the primate cause of the controversy in this case.
 

 Connelly’s survey of Township 21 South, Range 26 East, was approved, and grants of land were made by the United States in accordance therewith.
 

 Township 18 South, Range 26 East, was surveyed in 1831 by John W. Watson, United States deputy surveyor, as a part of the system of surveys running down the Mississippi river. Township 19 South, Range 27 East, was surveyed in 1831 in accordance with the latter system, and resurveyed by Maurice Hauke in 1860. Township 19 South, Range 25 East, was surveyed in 1840 by Rightor & McCollom, United States deputy surveyors, in accordance with the latter system. Grants were made by the United States in accord anee with all of these surveys.
 

 In 1906 the register of the state land office applied to the United States Surveyor General to have an examination and survey made of the unsurveyed lands in Township 18 South, Range 25 East, Township 19 South, Range 26 East, Township 20 South, Range 25 East, Township 20 South, Range 26 East, Township 20 South, Range 27 East, and Township 21 South, Range 25 East, in this land district, all in the parish of Plaque-mines, La., with a view to applying to the United States for them under the Swamp Land Grant Act.
 

 Frank T. Payne, United States deputy surveyor, was then employed to make the examination and survey requested.
 

 According to his field notes, Payne found the pre-established northeast corner of Township 18 South, Range 25 East.
 

 Then he went to a meander corner which he had established in some surveying done
 

 
 *727
 
 by him for the Oyster Commission on the south boundary of Township 19 South, Range 25 East (which township had been surveyed by Rightor & McCollom in 1840), and, according to his notes, ran east along the south boundary of Township 19 South, Range 25 East, 34.60 chains to Bay Baptiste, the southeast corner of this township falling in Bay Baptiste.
 

 As a matter of fact, the southeast corner of the latter township does not fall in Bay Baptiste, but in Cat Bay, which is south of Bay Baptiste. However, Cat Bay is locally known also as Bay Baptiste, and the exact boundary between the two bays is indefinite. Payne did no more surveying, but walked over the land and coasted through the waterways.
 

 He then made a series of plats of the townships he had been ordered to survey and examine. His plat of Township 19 South, Range 26 East (Exhibit Jacobs 4, Tr. vol. 8), and his plat of Township 20 South, Range 26 East (Exhibit Jacobs 2, Tr. vol. 8), each shows an ideal regular township of 6 miles square. These plats are dated October 12, 1908.
 

 He reported that the lands he had been ordered to examine were an impassable marsh, subject to tidal overflow. The United States General Land Office ruled that the lands in Township 19 South, Range 26 East, and Township 20 South, Range 26 East, belonged to the state of Louisiana by virtue of its sovereignty because they were tidal overflow lands. This court reached the same conclusion in State ex rel. Board of Commissioners of Buras Levee District v. N. A. Baker & Son, 146 La. 414, 83 So. 693.
 

 Payne, without doing any surveying to locate topography, attempted to sketch into his plats the topography of the land by reference to the maps of the United States Coast Geodetic Survey. The topography shown on the plats is in error, no matter what view is taken of the facts.
 

 Payne’s maps were approved by the Governor and deposited in the state land office.
 

 Presumably with Payne’s maps as a basis (as the state had no other map of Township 20 South, Range 26 East), the state, by act dated July 14, 1914, granted to the board of commissioners of the Buras levee district (which will be hereinafter called the levee board), certain lands in Township 20 South, Range 26 East. The lands so granted included all of the area shown on Payne’s maps as land except section 16. It was not, however, granted as a whole, but by sections, with the approximate area of each. This grant included, according to the description in the act, “In Township 20 South, Range Twenty-six East, S. E. Dist. La. Section 11 — - 213 acres, Section 12 — 8 acres, and Section .13 — 563 acres.” This was all of the land shown on Payne’s map as being in those sections. The balance of the area of these sections was shown on Payne’s map as being in Lake Grande Ecaille.
 

 John O. De Armas, parish surveyor of the parish of Plaquemines, subdivided a number of tracts of land into quarter sections, including the'lands which the levee board had acquired from the state as above set forth. He did not make any surveys, but merely copies from previous maps, subdivided the sections shown on them into quarter sections
 

 
 *729
 
 and fractional quarter sections, and estimated the area of each. For Township 20 South, Range 26 East, he copied Payne’s map and made his subdivisions. (For an-enlarged copy of De Armas’ map in so far as it relates to Sections 11, 12, and 13 of Township 20 South, Range 26 East, see Exhibit Plaintiff Buras 29, Tr. vol. 18.) De Armas’ subdivision shows for Sections 11, 12, and 13 of that township:
 

 ¿Section Approximate Area Total
 

 11 N. E.
 
 ¼
 
 44.00
 

 N. W.
 
 ¼
 
 14.00
 

 S. E.
 
 ¼
 
 102.00
 

 S. W.
 
 ¼
 
 53.00 213.00
 

 12 S. W.
 
 ¼
 
 8.00 8.00
 

 13 N. E.
 
 ¼
 
 93.00
 

 N. W.
 
 ¼
 
 150.00
 

 S. E. ¼ 160.00
 

 S. W.
 
 ¼
 
 160.00 563.00
 

 The levee board caused a number of its lands, including all of the area shown as land in that township on the De Armas map except section 16, to be advertised for sale at public auction by the sheriff of the parish of Plaquemines on the basis of De Armas’ subdivision under the provisions of Act No. 215 of 1908. The sale was held by Ernest Alberti, sheriff of the parish of Plaquemines, according to the advertisement on February 1, 1919.
 

 At the sale R. L. Gascon bid in a large number of tracts of land, including all of the lands advertised to be sold in Sections 11, 12, and 13 of Township 20 South, Range 26 East, as well as all other lands advertised for sale in that township. At the sale each quarter section or fractional quarter section of land wás offered and bid for separately at so much per acre. Gascon bid 50 cents per acre for each quarter section bid in by him. Before the sheriff’s procés verbal of the sale was signed, Gascon assigned his rights to J. Homer Jordan, trustee. The procés verbal was then made to read that the lands had been bid in by and adjudicated to Jordan at the sale at 50 cents per acre. In this procés verbal the lands are described in exactly the same way they were in De Armas’ subdivision (which is copied hereinabove in so far as Sections 11, 12, and 13, Township 20 South, Range 26 East, are concerned). The state then issued a number of patents to Jordan in confirmation of this sale. The patent which covers these sections is No. L. 40, which describes the lands patented as:
 

 “Northeast quarter, Northwest .quarter, Southeast quarter, Southwest quarter, of Section No. Eleven (11) Southwest quarter of Section No. 12, Northeast quarter, Northwest quarter, Southeast quarter, Southwest quarter of Section No. Thirteen (13) in Township No. Twenty (20) South Range No. Twenty-six (26) East in the Dist. W. of Miss. River Band District, Parish of Plaquemines, containing seven hundred and eighty four and no/100 acres according to the official plat or the survey of said land in the State Land Office.”
 

 The only plat of the land in the state land office was Payne’s.
 

 The patents state that they are in conformity with the adjudication, and that the adjudication was made under Act. No. 215 of 1908 as amended by Act No. 283 of 1914.
 

 Jordan then sold to Ernest Cockrell with warranty and subrogation 12%50 of the lands he had so acquired, and to W. T. Moran without warranty or recourse the other 2%50 thereof. In the acts of sale by which Jordan conveyed an undivided part of the lands he had acquired to Cockrell and the
 
 *731
 
 other undivided part to' W. T. Moran, the lands of which undivided parts were conveyed are described, in so far as pertinent, as:
 

 “Fifty two thousand Five Hundred (52,500) • acres of land, more or less, situated on the West side of the Mississippi River, in the Southeastern Land District of Louisiana, in Plaquemines Parish, and being * * * ■ all of fractional Sections Nos. 2 to 36, inclusive, except Section 16, in Township 20 South, Range 26 East, * * * it being the intention to describe and convey all the same land described and conveyed by Ernest Alberti, Sheriff for account Board of Commissioners, for the Buras Levee District, to J. Homer Jordan, Trustee, under date of Feby. 1st, 1919. * * * ”
 

 Cockrell sold to Mt. Forest Fur Farms, with warranty and subrogation, the undivided interest he had acquired by the same description by' which he acquired, reserving a royalty of one-eighth of all minerals, including oil, gas, and sulphur, and reserving the right to explore for minerals.
 

 Moran sold to the Moran Corporation of the South, without warranty or recourse, the undivided interest he had acquired by the same description by which he had acquired.
 

 The Moran Corporation of the South sold to the Mt. Forest Fur Farms with warranty of title, but not as to surveys or acreage and with subrogation the undivided interest it had acquired hy the same description by which it had acquired, reserving all minerals.
 

 The Mt. Forest Fur Farms sold to the Moran Corporation of the South, Inc., without warranty, but with subrogation, a one-tenth of its undivided interest in all the oil, gas, and other minerals in an undivided 2%50 of the land acquired by it as aforesaid, under the same description.
 

 The Mt. Forest Fur Farms transferred with warranty, but not as to surveys or acreage and with subrogation, to Mt. Forest Fur Farms of America, Inc., in exchange for stock, the whole of the land acquired by Jordan under practically the same description contained in the acts of sale from Jordan to Cockrell and Moran. The act of transfer states that the transferee takes cognizance of the above-mentioned reservations and transfers of mineral rights.
 

 Cockrell granted to the Gulf Refining Com pany of Louisiana, without warranty, an oil, gas, and mineral lease of the lands bought by Jordan, under the same description contained in the act of sale from Jordan to him.
 

 The Moran Corporation of the South granted to Roxana Petroleum Corporation an oil, gas, and mineral lease of an undivided of the lands bought by Jordan under the same description contained in the act of sale by Jordan to Moran.
 

 The Roxana Petroleum Corporation has changed its name to Shell Petroleum Corporation.
 

 After the grant by the state to the levee board on October 9, 1928, hereinafter described, the levee board granted to Frank J. Lobrano an oil, gas, and mineral lease on all lands in Township 20 South, Range 26 East, owned by the levee board, and other lands, reserving a one-eighth royalty on oil, gas, and other minerals.
 

 Lobrano assigned his lease to the Gulf Refining Company of Louisiana.
 

 
 *733
 
 The Gulf Refining Company of Louisiana, the Shell Petroleum Corporation, and the Humble Oil & Refining Company entered into a joint operating contract by which they pooled all of their oil leases within an area 6 miles square with United States Coast and Geodetic Station “Wash,” which is on the shore of Lake Grande Eeaille, as the center thereof, and agreed that the Humble Oil & Refining Company should exploit the pooled leases for the joint account of the three parties to the agreement.
 

 Under this agreement the Humble Oil & Refining Company has drilled two producing wells within the square, from which oil has been taken by the Humble Oil & Refining Company under the agreement.
 

 In the meantime, after the sale to Jordan, the state had a map of a large extent of the territory, including the neighborhood in which the lands involved are located, made by Allen E. Washburn, civil engineer, in 1925 (Exhibit Plaintiff Buras 8, Tr. vol. 10). Wash-burn did not do any surveying for his map, but compiled it from maps available to him. He located Township 18 South, Range 26 East, according to the map made by Watson in 1831. He located Township 19 South, Range 26 East, immediately south of Township 18 South, Range 26 East, and showed Township 19 South, Range 26 East, as a regular township, 6 miles square, as had Payne on his map.
 

 He located Township 20 South, Range 26 East, immediately south of Township 19 South, Range 26 East, but as, following Payne’s plan, it overlapped Township 21 South, Range 26 East, as laid out by Connelly in 1837, Washburn left off of his map the part of Township 20 South, Range 26 East, according to Payne’s map, which he considers overlaps Township 21 South, Range 26 East; that is, he left off the southern half of Township 20 South, Range 26 East, and shows Township 20 South, Range 26 East, as measuring 6 miles from east to west, but only 3 miles from north to south, and as being divided into 18 regular sections one mile square, instead of the regulation number, 36, for a complete regular township. He numbered the sections from 1 to 18 in the regular order, beginning in the northeast corner.
 

 He located Township 21 South, Range 26 East, immediately south of Township 20 South, Range 26 East, following Connelly’s survey for it He completed his map in 1925, and on October 8, 1928, the state granted to the plaintiff levee board certain lands, including the following:
 

 "Township 20 South Range 26 Bast.
 

 “Section 11 427 acres
 

 "Section 12 632 acres
 

 "Section 13 77 acres.”
 

 The above area is in accordance with the lands appearing on the Allen E. Washburn, C. E., map compiled in November, 1925, making proper allowance for navigable water areas and for lands in the above sections previously patented or conveyed by the state.
 

 It is these lands that are being sued for. They were located on the ground by a resurvey, as shown by plat of the board of state engineers filed in this case as “Plf — Buras 23,” and “Plf. Buras 23-A,” and an enlargement thereof of Secs. 11,12, and 13 in Tp. 20 S., R. 26 E., filed as “Plf — Buras 30.”
 

 
 *735
 
 After
 
 this
 
 suit was pending,
 
 the state
 
 board of engineers, in accordance with advice given by E. G. Harrington, cadastral engineer of the United States General Land Office, made a survey and prepared a map of
 
 k
 
 large area of land, including the neighborhood in question. This map (Exhibit Plaintiff Buras 23 A, Tr. vol. 11, and Buras 23, which is identical with Buras 23-A, except
 
 that
 
 Buras 23 has been marked on) was made from actual survey. The work was done by C. A. Roberts and Carroll L. Wood, Jr., civil engineers employed by the state board of engineers, under the supervision of Harry Jacobs, chief state engineer. At the same time the state board of engineers also made a detail .map (Exhibit Plaintiff Buras 30, Tr. vol. 18) show-: ing an enlargement of Sections 11, 12, and 13 of Township 20 South, Range 26 East, with De Armas’ plat' superimposed on it in red, The maps of the state board of engineers are dated July, 1932.
 

 Payne’s and De Armas’ maps show a large part of section 11, practically all of section 12, and a considerable part of section 13, as being in Lake Grande Eeaille. On the other hand, Washburn’s map shows these sections as being all land. The state board of engineers’ maps show almost all of sections 11 and 12 and all of section 13 as land. According to them, only a small portion off of the northeast corner of section 11 and a smaller portion off of the northwest comer of section 13 are in Lake Grande Eeaille.
 

 Lake Grande Eeaille is a navigable body of. water.
 

 Mr. Harrington has been in the employ of the General Land Office since 1908, with the exception of about six months in 1909. Eor a number of years he was United States surveyor, in which capacity he made a number of resurveys. Erom about 1927 until the time of the trial of this case he has been in the General Land Office at Washington as cadastral engineer. A cadastral engineer is one whose duties pertain to the establishment and re-establishment of boundaries. He and another employee of the General Land Office prepared the chapter on “Plats” of the 1930 edition of the Manual of Instructions for the Survey of Public Lands of the United States.
 

 Mr. Jacobs, the chief state engineer, has been, engaged in engineering and surveying since 1906. He has been employed by the state board of engineers since 1928. .
 

 Mr. Prank H. Waddill, who testified as an expert witness for the plaintiff levee board, is a civil engineer, who at the time of the trial had been engaged in the practice of civil engineering and surveying in Louisiana for about forty years. He is very familiar with the United States surveys of lands in Louisiana, and has had extensive experience in making resurveys.
 

 Mr. Harrington, Mr. Jacobs, and Mr. Wad-dill all testified that the resurveying of Township 20 South, Range 26 East, was a matter of resurvey; that is, taking Payne’s map and locating it on the ground. They said Payne’s map could not be disregarded and had to be taken as a basis for the resurvey because the lands had been transferred with reference to it. With regard to its conflicting with Connelly’s map of Township 21 South, Range 26 East, their opinion was that both should be shown overlapping the other in so far as they conflict. They said that the state board of
 
 *737
 
 engineers’ map is a correct map, made according to correct surveying principles; that it is a correct resurvey of Township 20 South, Range 26 East, and that it correctly shows the location and boundaries of the latter township and the sections thereof. They further stated that Payne’s map was tied in with the system of surveys made along the Mississippi river, and had no reference to Connelly’s survey' of Township 21 South, Range 26 East.
 

 This map (Exhibit Plaintiff Buras 23-A, Tr. vol. 11) shows Township 19 South, Range 26 East, as a regular township 6 miles square, located immediately south of Township 18 South, Range 26 East (which was surveyed by Watson in 1831). It shows Township 20 South, Range 26 East, as a regular township 6 miles square divided into 36 regular sections and numbered in the conventional manner. According to this map, the southern boundary of Township 20 South, Range 26 East, is in the Gulf of Mexico, and Connelly’s plat of Township 21 South, Range 26 East is superimposed over the south half of it, showing a conflict. Connelly’s survey does not, however, conflict with sections 11, 12, and 13 as shown.
 

 The two producing oil wells, according to the board of state engineers’ map, are located in the northwest quarter of the southwest quarter of Section 12, Township 20 South, Range 26 East. According to the state board of engineers’ enlargement of sections 11, 12, and 13 with De Armas’ plat superimposed (Exhibit Plaintiff Buras 30, Tr. vol. 18), these wells are actually on the land, but are in a location which is shown on Payne’s and De Armas’ maps as a part of the bed of Lake Grande Eoaille.
 

 The defendants produce as'a witness Mr. H. N. Stamper, a civil engineer employed by the Humble Oil & Refining Company. Mr. Stamper studied engineering at the State University of Texas, from which he received the degrees of B. S. and C. E. in 1922. He worked for about two years as field engineer for the Santa Fé Railroad, and then he engaged in the lumber business until 1927, when he entered the employ of the Humble Oil & Refining Company, for whom he had been doing construction and surveying work up to the time of the trial.
 

 It was admitted that W. A. Blakemore would testify as a witness for the defendants that he graduated from the University of Arkansas in 1911 with the degree of civil engineer; that he has been practicing civil engineering and surveying ever since; that for the seventeen years preceding the trial he was in the employ of the Gulf Refining Company of Louisiana doing actual field surveying work; that he and Stamper worked together in the preparation of the data testified to by Stamper; and that his testimony would be the same as Stamper’s.
 

 Stamper testified, based on actual surveying done by him, as to his idea of how Township 19 South, Range 26 East, and Township 20 South, Range 26 East, should be located and subdivided. He made a map showing the location- and subdivision of these townships according to his ideas (Exhibit Defendants’ Stamper 1, vol. 8).' Stamper’s map is a copy of the state board of engineers’ map (Exhibit Plaintiff Buras 23-A, vol. 11), with Stamper’s idea as to how Township 19 South, Range 26 East, and Township 20 South, Range 26 East, should be located and subdivided superimposed thereon in red. „
 

 
 *739
 
 According to Stamper’s opinion, Payne, in making his map, must have taken into consideration Connelly’s survey of Township 21 South, Range 26 East (which was 3 miles too far north), and must have considered the northern boundary of Township 21 South, Range 26 East, as the southern boundary of Township 20 South, Range 26 East. He says that, as Payne did not measure the distance between the southern boundary of Township 18 South, Range 26 East, and the northern boundary of Township 21 South, Range 26 East, according to Connelly’s survey, Payne must have presumed it to be 12 miles, though it was in fact only 9 miles, due to an error in the location of Connelly’s survey. Stamper is of the opinion that Payne intended to fit Section 19 South, Range 26 East, and Section 20 South, Range 26 East, in between Section 18 South, Range 26 East, and Section 21 South, Range 26 East, as surveyed by Connelly. He says that this must be done in a resurvey of this locality, and that the only way to do it is to scale down the north and south dimensions of Township 19 South, Range 26 East, and Township 20 South, Range 26 East, so as to make them fit in. His map is drawn in accordance with his opinion. It shows these two townships, each measuring 6 miles from east to west by only four and a half miles from north to south. It shows them each divided into 36 sections, numbered in the regular manner, and measuring each one mile from east to west, but only three-quarters of a mile from north to south.
 

 According to Stamper’s map, sections 11,12, and 13 are located some distance north of their location according to the map of the state board of engineers.
 

 Stamper’s theory is based upon the assumption that, when Payne made his map, Payne had in mind Connelly’s survey of Township 21 South, Range 26 East, and intended that Township 20 South, Range 26 East, should be bounded on the south by Connelly’s survey.
 

 The opinion of Waddill, Jacobs, and Harrington is in direct conflict with Stamper’s theory. They say Payne’s survey proceeds from the north to the south, and has no reference whatever to Connelly’s survey.
 

 It is shown that, when J. Homer Jordan, trustee, the author of the defendants’ title, acquired the lands described in patent No. L. 40, the only plat of said lands then in the state land office was Payne’s plat, and the patent in express terms conveyed the lands according to the plat and survey thereof then in the state land office.
 

 It is shown that the several engineers who testified for the plaintiff are without interest in the result of this litigation, and they have a standing in their profession and a knowledge of the locus not excelled, if equaled, by the two experts offered by the defendants, one of whom is an employee of the defendant Humble Oil & Refining Company, and the other an employee of the defendant Gulf Refining Company of Louisiana.
 

 I have carefully considered all of the facts disclosed by the record, and have reached the conclusion that counsel for plaintiff, in their original brief, correctly say that the engineers who testified for the plaintiff have fob lowed the law:
 

 . “(1) In treating the Payne surveys as related to the system of rectangular surveys of the United States Land Office.
 

 
 *741
 
 “(2) In reading the Payne survey in the language in which it is written — that of a United S irveyor reporting to the Unit Office.
 

 “G note ular east begi and as c . ;he calls of Payne’s field
 
 j
 
 of his work and partic'ayne’s call for the south-ship 19 S. R. 25 E. as the Payne’s survey of T. 19 nd T. 20 S. R. 27 E., and surveys.
 

 of the adjoining boundaries ! identical with the bound.•veys.
 

 Payne’s calls for course his point of beginning— r of T. 19 S. R. 25 E. unsurveyed lines indieaon Payne’s plats as not 'ey.
 

 on of as die unsurveyed shore lines merely as boundary lines reference thereto and not ocation 'of the survey.”
 

 stated, I dissent.